Richmond.

CONRAD V. CONRAD'S EXECUTOR AND OTHERS.

November 14, 1918.

Absent, Whittle, P.

1. WILLS—*Construction—Stare Decisis—Prior Decisions Construing Wills.*—As it is extremely rare to find two cases alike in all respects, little or no aid can be derived by a court in constru- ing a will from prior decisions construing other wills. It is not enough that the same words in substance, or even literally, have been construed in other cases. It often happens that the same identical words require different constructions, according to the context and the peculiar circumstances of each case.

2. WILLS—*Construction—Intention of the Testator.*—The rule is ele- mentary that the intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy. In ascertaining this intention the language used, and the sense in which it is used by the testator, is the primary source of information, as it is the *expressed* intention of the testator which is sought.

3. WILLS—*Construed as a Whole—Isolated Clauses.*—Isolated clauses or sentences are not to be considered by themselves, but the will is to be considered as a whole, and its different clauses and provisions examined and compared so as to ascertain the general plan and purpose of the testator, if there be one. Nothing is to be added to or taken from the language used, and every clause and every word must be given effect, if pos- sible.

4. WILLS—*Construction—Technical and Ordinary Words.*—Generally, ordinary words are to be given their usual and ordinary mean- ing, and technical words are presumed to have been used in a technical sense. If words or phrases are used which have a well defined legal significance, established by a line of judicial decisions, they will be presumed to have been used in that sense, in the absence of evidence of a contrary intent, especially when used by one having knowledge of such significance.

5. WILLS—*Construction—Where Intention is Plain.*—It is not per- mitted to interpret what has no need of interpretation.

6. WILLS—*Gift for Benefit of Wife and Children.*—A gift to a wife for the benefit of herself and children, or words of like effect, is a gift to the wife, and the children take no interest or estate in the property given, and are only mentioned to express the motive for the gift to the wife.

7. WILLS—*Gift for Benefit of Wife and Children—Case at Bar.*— In the instant case testator provided, "That the interest on all said investments be collected by my executrix and applied to the support of herself and our children." The executrix was testator's wife.

   *Held:* That the wife of testator took the absolute property in the income of his estate, and that the children had no interest therein.

8. WILLS—*Construction—"Direct."*—Testator in his will "directed" that his debts and liabilities be paid from the proceeds of the unsecured debts, that his secured claims and stocks, so far as regarded as safe by his executrix, should be kept as investments, that his life insurance be collected and the proceeds invested, that his real estate should be sold, and that the interest on all investments collected by his executrix should be applied to her support and the support of her children.

   *Held:* That the word "direct" was not used in the sense of an imperative command or direction, but must be construed as meaning "advise."

9. WILLS—*Construction—Power to Make Advancements.*—A will contained the following provision: "As our children become of age or marry, my executrix may make such advancements of the principal of my estate to them as she may think proper— provided that she secure to herself a net income during her life of fifteen hundred dollars a year."

   *Held:* That the power to make advancements conferred was limited only by the discretion of the executrix, the wife of the testator and the mother of the children.

10. WILLS—*Construction—Gift to Wife—Gift Over to Children.*—A testator provided that, "At my wife's death all of my estate should be so apportioned among my children as to give to each an equal share of the whole." It was contended that this clause gave a vested remainder to the children in the estate. There would be much force in this contention, if the previous provision of the will had simply given the wife a life estate in the whole, with power to make advancements, but this was not the case. The language is by no means mandatory. It was simply the expression of opinion of the testator upon matters as they then stood. The use of the word "should" indicates that it was a mere suggestion, and that the subject was nevertheless left to the discretion of the wife.

11.  WILLS—*Construction—Jus Disponendi.*—Where a person is given absolute dominion over property, whether the estate be legal or equitable, this constitutes a gift of the property itself, and that any gift over of "what remains at her death" or "such part as she may not appropriate," or the like, is void.

12.  WILLS—*Construction—Jus Disponendi—Case at Bar.*—In the instant case testator directed "that the interest on all said investments should be collected by my executrix and applied to the support of herself and our children, but should such income, in the opinion of my executrix, prove inadequate for that purpose, then she might use the principal to any extent she may desire."

   *Held:* That executrix, who was testator's wife, had an unlimited power of disposal during her lifetime of the estate devised and bequeathed by the testator's will.

13.  WILLS—*Partial Intestacy.*—A will contained the following clause: "That my real estate, except my dwelling, which is owned jointly with my wife, be sold at public or private sale by my executrix, and the proceeds be invested as directed in the preceding clause."

   *Held:* That the testator died intestate as to his one-half interest in the property described as my dwelling house.


Appeal from a decree of the Corporation Court of city of Winchester. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Jas. P. Reardon,* for the appellant.

*Thos. W. Harrison* and *R. Gray Williams,* for the appellees.

BURKS, J., delivered the opinion of the court.

Holmes Conrad, a distinguished lawyer of the city of Winchester, Va., executed his holograph will in October, 1883, and died in September 1915. At the time the will was executed his family consisted of his wife and seven

children, all under age, and several of them of very tender years. At the time of his death all of the children were of age, several of them had married and established homes of their own, one or more of them were still living with him, and one married daughter had died leaving an infant of tender years who was named after the testator. It does not appear that any children were born after the date of the will. After the will was admitted to probate, the bill in this cause was filed by his widow in her own right and as executrix asking for its construction. The appellant answered the bill, denying some of its most important allegations, and making certain charges and allegations, which need not be here stated, by way of a crossbill against the complainant. The complainant demurred to the cross-bill, which demurrer the trial court, in the main, sustained.

Very few of the facts and circumstances surrounding the testator are given in either the bill or the cross-bill, and what are herein stated are mainly gathered from admissions or uncontroverted statements in the briefs of counsel. They give little, if any, aid in the interpretation of the will. The only question involved is what estates did the widow and children of the testator, respectively, take under his will. The following is a copy of the will:

"I, Holmes Conrad do make this my last will, written throughout with my own hand.

"1. I direct that my debts and liabilities be paid as far as may be from the proceeds of the unsecured debts due to me.

"2. That my secured claims and my stocks as far, and so long as they may be regarded by my executrix as safe, be kept as investments so long as the interest is promptly paid.

"3. That my life insurance be collected and the proceeds be invested in some good six per cent. fund or real estate security in Virginia.

"4. That my real estate, except my dwelling, which is owned jointly with my wife, be sold at public or private sale by my executrix, and the proceeds be invested as directed in the preceding clause.

"5. That the interest on all said investments be collected by my executrix and applied to the support of herself and our children.

"6. But should such income, in the opinion of my executrix, prove inadequate for that purpose, then she may use the principal to any extent that she may desire.

"7. As our children become of age or marry, my executrix may make such advancements of the principal of my estate to them as she may think proper—provided that she secure to herself a net income during her life of fifteen hundred dollars a year.

"8. All of my personal property, except my cash and choses in action, I give to my wife.

"9. At my wife's death all of my estate should be so apportioned among my children as to give to each an equal share of the whole.

"10. I appoint my wife, Georgia B. Conrad, sole executrix of my will, and desire that she qualify without surety.

"Witness my hand this 1 October, 1883.

"HOLMES CONRAD."

Before proceeding with the interpretation of the will, we will advert to certain underlying principles which are controlling in the interpretation of all wills, and to some of the decisions of this court construing somewhat similar language in other wills, bearing in mind, however, the admonition that "as it is extremely rare to find two cases alike in all respects, little or no aid can be derived by a court in construing a will from prior decisions construing other wills. It is not enough that the same words in substance, or even literally, have been construed in other

cases. It often happens that the same identical words require different constructions, according to the context and the peculiar circumstances of each case." *Rhett* v. *Mason*, 59 Va. (18 Gratt.) at p. 560.

The rule is elementary that the intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy. In ascertaining this intention the language used, and the sense in which it is used by the testator, is the primary source of information, as it is the *expressed* intention of the testator which is sought.

Isolated clauses or sentences are not to be considered by themselves, but the will is to be considered as a whole, and its different clauses and provisions examined and compared so as to ascertain the general plan and purpose of the testator, if there be one. Nothing is to be added to or taken from the language used, and every clause and every word must be given effect, if possible. Generally, ordinary words are to be given their usual and ordinary meanings, and technical words are presumed to have been used in a technical sense. If words or phrases are used which have a well defined legal significance, established by a line of judicial decisions, they will be presumed to have been used in that sense, in the absence of evidence of a contrary intent, especially when used by one having knowledge of such significance. If, when so considered, the intention of the testator can be discerned that is the end of the investigation, as "it is not permitted to interpret what. has no need of interpretation." Compare, *Ross* v. *Ross*, 115 Va. 374, 79 S. E. 343.

In the case in judgment, the gift in clause five of the will to the testator's wife, to be "applied to the support of herself and our children" is of the class of phrases above mentioned, and the testator must have been familiar with

the construction placed upon it by a line of decisions of this court, for he was an able and well informed attorney, living and practicing his profession in this State. In an unbroken line of decisions from *Wallace* v. *Dold*, 30 Va. (3 Leigh) 258, decided in 1831, to *Honaker* v. *Duff*, 101 Va. 675, 44 S. E. 900, decided in 1903, it has been held that a gift to a wife for the benefit of herself and children, or words of like effect, is a gift to the wife, and that the children take no interest or estate in the property given, and are only mentioned to express the motive for the gift to the wife. It would be a work of supererrogation to re- view the cases as that has been sufficiently done in *Stace* v. *Bumgardner*, 89 Va. 421, 16 S. E. 252, and *Tyack* v. *Berkeley*, 100 Va. 296, 40 S. E. 904, 93 Am. St. Rep. 963. We have no difficulty, therefore, in declaring that as to the income of testator's estate mentioned in clause five of his will, his wife took the absolute property, and that his chil- dren have no interest therein.

We are to ascertain the meaning of the words used in the will, not in the abstract, but in the sense in which they were used by the testator, if that can be ascertained. Counsel for the appellant, in his brief and also in his oral argument, insists that the word "direct" used in para- graph one of the will, and which is applicable to the first five paragraphs thereof, is used in the sense of an impera- tive command or direction, that the testator sought by its use to keep control of his estate after his death, and con- serve it for the benefit of his children after the death of their mother. The word, however, also means "to point out a way; to indicate a course to; advise concerning a course or procedure" (standard dictionary), and we are of opinion that it was in this sense the testator used it in his will. It must be borne in mind that the testator was writing his will that could not take effect until his death, when his wife could no longer have the benefit of his ad-

vice and assistance, and hence, as far as he could anticipate, he undertook to "advise" her, to "point out" and "indicate" to her, the course of conduct or procedure to be followed in the administration of his estate. That the testator had implicit confidence in the ability and integrity of his wife, is manifested by the fact that he appointed her the sole executrix of his will, and "without surety." But our women are not educated in business affairs, and when to the cares of the family there is added the cares of business, they are greatly in need of professional advice upon which they can rely with confidence. With full knowledge of these facts, the testator directs or advises his wife to collect his unsecured debts and from the proceeds discharge his liabilities, to keep intact his stocks and investments made by him "so long as the interest is promptly paid," to invest his life insurance money in good six per cent. funds or real estate security, and to sell his real estate and make like investment. After telling her how the investments were to be made, he then directs how the interest thereon is to be applied. We are unable to concur in the view that these directions were other than advisory only.

The power to make advancements conferred by paragraph 7 of the will is limited only by the discretion of the mother. We attach no importance to the use of the word "executrix" instead of "wife" in this and other clauses of the will. The wife was nominated in the will as the "sole executrix of my will," and there is nothing in the will to indicate that the testator had in mind any other person than his wife. The proviso in this paragraph was solely for the benefit of the wife, was advisory only, and no one could complain if she chose to waive it. The wife was to make such advancements "as she may think proper." The children were then small, and as their needs might vary greatly as they grew up and settled in life, this entire subject was left wholly to the discretion of the wife. As justly

observed by Judge Keith in *Tyack* v. *Berkeley,* 100 Va. 301, 40 S. E. 907, 93 Am. St. Rep. 963.

"The wit of man has not yet discovered a safer repository than the mother for the rights and interest of children. Under the stress of some great emergency she may sacrifice the apparent and immediate interest of the child, but even in such a case a full knowledge of the surrounding facts and circumstances might go far to vindicate the propriety and wisdom of her conduct. As a rule, her love and spirit of self-abnegation, where her children are concerned, may be trusted to do what is wisest and best to conserve and promote their interests."

The wisdom of this discretion vested in the wife seems to be vindicated by what the testator himself did in reference to this matter. He lived upward of thirty years after his will was written, and, while he made advancements to all of his other children, he made none to the appellant, and one of the grounds of complaint in appellant's answer is "the testator in his lifetime and his executrix since his death, have made repeated and large advancements to all of said children save your respondent."

It is insisted by counsel for the appellant that the 8th clause of the will by which the testator gave to his wife his tangible personal property, consisting chiefly of household and kitchen furniture, was the only direct gift to the wife alone, and that the 9th clause gave a vested remainder to his children in all the residue of testator's estate. The latter clause is as follows: "At my wife's death all of my estate should be so apportioned among my children as to give to each an equal share of the whole." There would be much force in this contention, if the previous provision of the will had simply given the wife a life estate in the whole, with power to make advancements, but that is not our interpretation of the will as a whole. The language is by no means mandatory. It was simply

the expression of opinion of the testator upon matters as they then stood. His children were small, and he could not then see any reason for discrimination between them, but knowing that the situation might change, he gave no direction on the subject and left the whole subject to the discretion of his wife. The use of the word "should" indicates that it was a mere suggestion, and that the subject was nevertheless left to the discretion of the wife.

By clauses 5 and 6 of the will, the testator directs, (5) "that the interest on all said investments be collected by my executrix and applied to the support of herself and our children, (6) but should such income, in the opinion of my executrix, prove inadequate for that purpose, then she may use the principal to any extent she may desire." We have already seen that by clause 5 the wife took the absolute property in "the interest on all said investments." As to the "principal," the wife is given the power to use it "to any extent she may desire," in the event that, *in her opinion*, the income from the investments were not adequate for the purpose mentioned. It matters not what was the value of the testator's estate, or of the interest on the investments, the sole test of the inadequacy of the interest was *her opinion* on the subject, which no court could control or direct. It was a large power to confer upon the wife, but it was fully within the power of the testator to confer it, without let or hindrance from any source, and he has conferred it in the most explicit terms. He plainly had the most implicit confidence that the power would be honestly exercised, and, even if he was in error in that respect there is no one who can limit her power, or hold her to account for its improper exercise. In a long line of decisions in this State from *Shermer* v. *Shermer*, 1 Wash. (1 Va.) 266. 1 Am. Dec. 460 to *Smith* v. *Smith*, 122 Va. 341, 94 S. E. 777, it has been held that where a person is given absolute dominion over property, whether the estate

be legal or equitable, this constitutes a gift of the property itself, and that any gift over. of "what remains at her death" or "such part as she may not appropriate," or the like, is void. The language of the gift over varies, but the same conclusion is reached. If the power is conferred it is immaterial whether it is exercised or not. The estate granted remains the same. *Crutchfield* v. *Greer*, 113 Va. 232, 74 S. E. 166. It might be supposed that the above holding, which is generally designated as the doctrine of *May* v. *Joynes*, 61 Va. (20 Gratt.) 692, was restricted to cases where the dominion of the first taker was unlimited and unqualified, and that it would not apply where the power of the first taker, though unlimited, was yet qualified, and to be exercised only in a given event, or for a given purpose, as for example as unlimited power of disposal for "support and maintenance," but the cases do not justify such a restriction of its application, and the rule is so firmly settled that it has become a rule of property, and we do not feel at liberty to depart from it. In *Brown* v. *Strother*, 102 Va. 145, 47 S. E. 236, the gift was to a brother and sister of "all I possess on earth *for their support, to be used in no other way*" (italics supplied), and "if there is anything left after their death," there was a gift over to others, but the latter was held void. In *Rolley* v. *Rolley*, 109 Va. 449, 63 S. E. 988, 21 L. R. A. (N. S.) 64, the gift was to the wife "to be used and enjoyed by her, in such quantities as may be requisite for *her comfortable maintenance* (italics supplied, so long as she remain my widow," and in *Randall* v. *Harrison*, 109 Va. 686, 64 S. E. 992, the gift was to the wife, and the testator, after stating that he was apprehensive that after paying his debts there would not be enough left from the proceeds to give her *a decent maintenance* (italics supplied) "from the interest in such residue" authorized his wife to use "any and all the principal," declaring, however, "but it is my wish and injunction, which I know will be faithfully carried

out by my dear wife, that the principal of any amount left from my estate be drawn upon to supply her own necessities." In each of these cases it was held that the wife took a fee in the real estate and an absolute estate in the personalty; and that the gift over "of all the property * * * which shall then be unconsumed" in the first case, and "of anything that may be left," in the other case, was void. Applying these principles to the case in judgment, the conclusion is inevitable that under the sixth clause of the will Mrs. Conrad has an unlimited power of disposal during her life-time of the estate devised and bequeathed by the testator's will.

A list of the cases decided by this court on this subject is given in the margin for convenience of reference.* In none of these cases, however, is the effect of the act of 1903 (Acts 1908, p. 187) amending section 2418 of the Code considered, nor is it necessary now to consider it, as Mrs. Conrad is still living and the will provides that, under the circumstances therein mentioned, "she may use the principal to any extent that she may desire."

Looking to the will as a whole, we are of opinion that the testator intended to advise his wife with reference to the

---

*The following cases deal with the subject. Shermer v. Shermer, 1 Wash. (1 Va.) 266, 1 Am. Dec. 460; Riddick v. Cohoon, 4 Rand. (25 Va.) 547; Madden v. Madden, 2 Leigh (29 Va.) 377; Burwell v. Anderson, 3 Leigh (30 Va.) 348; Nelson v. Cooper, 4 Leigh (31 Va.) 408; Dunbar v. Woodcock, 10 Leigh (37 Va.) 628; Brown v. George, 6 Grat. (47 Va.) 424; Sprinkle v. Hayworth, 26 Grat. (67 Va.) 384; Missionary Soc. v. Calvert, 32 Grat. (73 Va.) 357; Carr v. Effinger, 78 Va. 197; Cole v. Cole, 79 Va. 251; Randolph v. Wright, 81 Va. 608; Johns v. Johns, 86 Va. 333, 10 S. E. 2; Miller v. Potterfield, 86 Va. 876, 11 S. E. 486, 10 Am. St. Rep. 919; Hall v. Palmer, 87 Va. 354, 12 S. E. 618, 11 L. R. A. 610, 24 Am. St. Rep. 653; Bowen v. Bowen, 87 Va. 438, 12 S. E. 885, 24 Am. St. Rep. 664; Smythe v. Smythe, 90 Va. 638, 19 S. E. 175; Farish v. Wayman, 91 Va. 430, 21 S. E. 810; Davis v. Heppert, 96 Va. 775, 32 S. E. 467; Honaker v. Duff, 101 Va. 675, 44 S. E. 900; Brown v. Strother, 102 Va. 145, 47 S. E. 236; Robertson v. Hardy, 23 S. E. 766, 2 Va. Dec. 275; Bing v. Burrus, 106 Va. 478, 56 S. E. 222; Hawley v. Watkins, 109 Va. 122, 63 S. E. 560; Rolley v. Rolley, 109 Va. 449, 63 S. E. 988, 21 L. R. A. (N. S.) 64; Hunter v. Hicks, 109 Va. 615, 64 S. E. 988 Randall v. Harrison, 109 Va. 686, 64 S. E. 992; Hansbrough v. Presbyterian Church, 110 Va. 15, 65 S. E. 467; Crutchfield v. Greer, 113 Va. 232, 74 S. E. 166; Taylor v. Johnson, 114 Va. 329, 76 S. E. 325; Avant v. Cook, 118 Va. 1, 86 S. E. 903; Smith v. Smith, 122 Va. 341, 94 S. E. 777. Johns v. Johns, 86 Va. 333, 10 S. E. 2, is distinguished on the facts, from May v. Joyes, supra, and Miller v. Potterfield, 86 Va. 876, 11 S. E. 486, 19 Am. St. Rep. 919, is overruled by Hansbrough v. Presbyterian Church, supra.

management of his estate, including the matter of advancements, to give to her absolutely the tangible personal property mentioned in clause 8 of his will, and the interest on all the investments mentioned in clause 5, and that as to the whole of the principal of his estate mentioned in clause 6 he gave to her the unlimited and unrestricted use.

It is assigned as cross-error by the appellees that the trial court erred in holding that the testator died intestate as to a one-half interest in the property described as "my dwelling," instead of holding that she had a life estate therein by implication.

We find no error in the holding of the trial court in this or any other respect, and its decree will be in all respects affirmed.

*Affirmed.*